UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DE'ANDRE L. KIDD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>E. ROMAN, et al.<br><br>　　　　Defendants. | No. 1:23-cv-01500-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 34) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed June 25, 2025.

**I.**

**PROCEDURAL BACKGROUND**

On February 23, 2024, the Court ordered that this action proceed on Plaintiff's second amended complaint against Defendant E. Roman[1] for excessive force, against Defendant C. Rodriguez for failure to intervene in the use of excessive force, and against the unidentified licensed

---

[1] Erroneously identified as E. Ruman.

1  vocational nurse (Defendant Doe) for deliberate indifference to a serious medical need.[2]  (ECF No.
2  13.)
3       On April 26, 2024, Defendants Rodriguez and Roman filed an answer to the operative
4  complaint.  (ECF No. 19.)
5       After an unsuccessful settlement conference, the Court issued the discovery and scheduling
6  order on August 16, 2024.  (ECF No. 33.)
7       On June 25, 2025, Defendants Rodriguez and Roman filed the instant motion for summary
8  judgment.  (ECF No. 34.)  Plaintiff did not file an opposition and the time to do has passed.[3]
9  Accordingly, Defendants' motion for summary judgment is deemed submitted for review without
10 oral argument.  Local Rule 230(l).

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen

---

[2] Plaintiff has failed to identify the Doe Defendant, despite the fact that discovery closed on April 16, 2025.  (ECF No. 33.)  Accordingly, the Doe Defendant must be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

[3] Concurrently with the motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1  v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

Defendant E. Roman has a clear view from the tower to Plaintiff's cell and at the time of the incident there was nothing blocking his path of view. When E. Roman smashed Plaintiff's hand in the door he could see and hear Plaintiff yelling about his hand multiple times, but he did not stop opening the cell door. That is the reason Plaintiff has requested all video cameras on the day of the incident. Defendant C. Rodriguez failed to intervene while Plaintiff's hand was smashed and did not alert E. Roman to stop opening the door. Rodriguez just stood there and looked at what was happening to Plaintiff.

### B. Statement of Undisputed Facts[4, 5]

1. Plaintiff De'Andre Lamar Kidd (AP3860) is a California prison inmate who was incarcerated at the Substance Abuse Treatment Facility (SATF) in Corcoran, California, on the date of the incident alleged in the Complaint, January 22, 2023. (Barba Decl. Ex. 6 (Audio at 0:14); Pl. Dep. 6:6-15, 18:16-24.)

---

[4] Hereinafter referred to "UF."

[5] Because Plaintiff did not file an opposition, the Court accepts Defendants' statement of facts, except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

3

2.     Prior to the alleged incident, Plaintiff had been incarcerated in five different CDCR facilities since October 2013. Plaintiff had been at SATF for approximately five years at the time of the alleged incident.  (Barba Decl. Ex. 11; Pl. Dep. 18:16-21.)

3.     At all five of the CDCR facilities Plaintiff had previously been incarcerated at, cell doors opened and closed electronically.  (Pl. Dep. 15:9-23; 16:10-25; 17:1-12.)

4.     Prior to 5:25 p.m. on January 22, 2023, Plaintiff knew Defendant Officer E. Roman but had no negative interactions with him. Plaintiff does not believe Defendant Roman opened the door intentionally to hurt him. "To be honest with you, I don't think he did it purposely intentionally."  (Pl. Dep. 18:9-15; 41:11-12.)

5.     Prior to 5:25 p.m. on January 22, 2023, Plaintiff knew Defendant Officer C. Rodriguez but did not have many interactions with him; Plaintiff believed Rodriguez "was more worried trying to come to my cell, searching my cell."  (Pl. Dep. 17:13-25; 18:1-8; 36-1-3; 45:7-9.)

6.     On January 22, 2023, Plaintiff was housed in SATF, Facility C Building C8, in Cell No. 208.  (Pl. Dep. 18:16-24; Rodriguez Decl. ¶ 4; Roman Decl. ¶ 4.)

7.     On January 22, 2023, SATF, Facility C Building C8, Cell No. 208 was occupied by Plaintiff and another inmate.  (Barba Decl. Ex. 9; Pl. Dep. 18:22-25, 19:1-9.)

8.     On January 22, 2023, at approximately 5:25 p.m., Defendant Roman was stationed in the tower working as Control Booth Operator.  (Barba Decl. Ex. 8; Roman Decl. ¶ 2-3.)

9.     Defendant Roman was stationed approximately 50 feet from Cell No. 208. All cell doors are opened and closed electronically from the Control Booth Tower and by the Control Booth Officer. SATF post orders required communication and coordination between the floor officer and Control Booth Officer regarding the cell door opening must occur before the Control Booth Officer opens the cell. This communication need not always be verbal and may consist of a handwave or other way of getting the Control Booth Officer's attention.  (Barba Decl. Ex. 8; Roman Decl. ¶ 2, 3, 5.)

10.    On January 22, 2023, sometime before 5:25 p.m., Defendant Officer C. Rodriguez, who was working as the Facility C Building, Unit C8 Floor Officer #1, pursuant to his post orders,

4

notified Defendant Roman in the Control Room Booth, through a gear port connecting the staff room and Control Room Booth, that he decided to conduct a random cell search of Cell No. 208, which was Plaintiff's cell.  (Barba Decl. Ex. 7; Rodriguez Decl. ¶ 2-4; Roman Decl. ¶ 4.)

11. On January 22, 2023, at approximately 5:25 p.m., Defendant Rodriguez and a fellow officer approached the door to Cell No. 208.  Barba Decl. Ex. 6 (Video at 0:10); Rodriguez Decl. ¶ 5; Roman Decl. ¶ 5.)

12. On January 22, 2023, at approximately 5:25 p.m., Defendant Rodriguez told Plaintiff the officers would be conducting a random cell search. Plaintiff heard Defendant Rodriguez notify him of the cell search.  (Barba Decl. Ex. 6 (Video at 0:11); (Audio at 3:32); Pl. Dep. 23:2-7; Rodriguez Decl. ¶ 5.)

13. By motioning with his hand, Defendant Rodriguez signaled to Defendant Roman to mechanically open the door to Cell No. 208.  (Barba Decl. Ex. 6 (Video at 0:11); Rodriguez Decl. ¶ 5; Roman Decl. ¶ 5.)

14. On January 22, 2023, just after approximately 5:25 p.m., Defendant Roman attempted to mechanically open the door to Cell No. 208 by depressing the corresponding red button in the Control Room Booth.

15. After the cell door to Cell No. 208 was opened, Plaintiff looked down at his left thumb and made a passing remark. Defendant Rodriguez asked Plaintiff if he was okay but received no response from Plaintiff. Defendant Rodriguez instructed Plaintiff to exit the cell, but Plaintiff did not comply.  (Barba Decl. Ex. 6 (Video at 0:49); Rodriguez Decl. ¶ 7.)

16. Plaintiff retreated into Cell No. 208 where his actions were obscured by a makeshift hanging curtain.  Meanwhile, Defendant Rodriguez instructed Plaintiff to remove the makeshift curtain, but Plaintiff did not comply.  (Barba Decl. Ex. 6 (Video at 0:53); Rodriguez Decl. ¶ 7.)

17. After a few seconds, Plaintiff emerged from behind the curtain and dropped an undisclosed object into the Cell No. 208 toilet before flushing it.  (Barba Decl. Ex. 6 (Video at 1:12); Rodriguez Decl. ¶ 7.)

18. While Defendant Rodriguez instructed Plaintiff to exit Cell No. 208 to undergo a

5

clothed body search, Plaintiff returned behind the curtain and spoke with his cellmate. (Barba Decl. Ex. 6 (Video at 1:20); Rodriguez Decl. ¶ 8.)

19. Approximately 30 seconds later, Plaintiff and Love emerged from behind the curtain, pushing it to the side, and exited Cell No. 208. (Barba Decl. Ex. 6 (Video at 1:42); Rodriguez Decl. ¶ 8.)

20. While exiting Cell No. 208 in front of Defendant Rodriguez, Plaintiff raised and examined his hand. No blood or lacerations were seen by Defendant Rodriguez or are visible on the body camera footage. (Barba Decl. Ex. 6 (Video at 1:48); Rodriguez Decl. ¶ 9.)

21. Defendant Rodriguez completed a clothed body search of Plaintiff and instructed Plaintiff to wait in the shower adjoining Cell No. 208. (Barba Decl. Ex. 6 (Video at 1:53); Rodriguez Decl. ¶ 9; Roman Decl. ¶ 6.)

22. Plaintiff walked to the shower while Defendant Rodriguez completed a clothed body search of Plaintiff's cellmate; Defendant Rodriguez's fellow officer then escorted Plaintiff and his cellmate into the shower and secured the shower door. (Barba Decl. Ex. 6 (Video at 1:59); Rodriguez Decl. ¶ 9; Roman Decl. ¶ 6.)

23. Defendant Rodriguez and his fellow officer returned to Cell No. 208 and conducted a systematic cell search. (Barba Decl. Ex. 6 (Video at 2:28); Rodriguez Decl. ¶ 9; Roman Decl. ¶ 6.)

24. Plaintiff was occupying the upper bunk in Cell No. 208 on January 22, 2023. (Barba Decl. Exh. 10.)

25. During the approximately 20-minute systematic cell search, a pillowcase in the upper bunk of Cell No. 208 was found. The pillowcase contained a blue Motorola Cellular device, a black charging cable with charging plug, and two security bits. (Barba Decl. Ex. 9; Rodriguez Decl. ¶ 10.)

26. The supervising sergeant was notified of the discovery and the contraband was placed in Evidence Locker #7 in the Investigative Services Unit (ISU) Sub Evidence Locker Room. (Barba Decl. Ex. 9.)

27. Plaintiff was taken to medical later in the evening on January 22, 2023, after

6

1  notifying Defendant Roman about his left thumb pain at approximately 6:45 p.m. Plaintiff

2  reported to the pill line window at 7:00 p.m. requesting an alcohol wipe to clean a small scratch

3  on his hand. No swelling, bruising or active bleeding was noted. Plaintiff requested an x-ray as

4  his left hand. Plaintiff completed a 7362 Health Care Request form. (Barba Decl. Ex. 14; Roman

5  Decl. ¶ 7; Singh Decl. Ex. 1, 2.)

6      28.  At 9:26 p.m. on January 22, 2023, a Rules Violation Report (RVR) was completed

7  for the contraband found in Plaintiff's cell (a blue Motorola Cellular device, a black charging

8  cable with charging plug, and two security bits) found in Cell No. 208. (Barba Decl. Ex. 9;

9  Rodriguez Decl. ¶ 10.)

10      29.  On January 23, 2023, Plaintiff retuned to medical, but refused care from the nurse

11  on duty and signed a Refusal of Examination and/or Treatment form. (Singh Decl. Ex. 3.)

12      30.  On January 25, 2023, Plaintiff's left hand was x-rayed finding "no acute fracture

13  or dislocation" and that the "visualized soft tissues are unremarkable." (Singh Decl. Ex, 4, 5.)

14      31.  Plaintiff received a copy of the RVR for case No. 7262529 regarding the

15  contraband found in Cell No. 208 on January 31, 2023. (Barba Decl. Ex. 10.)

16      32.  Plaintiff reviewed the body camera footage associated with the alleged incident on

17  February 9, 2023. (Barba Decl. Ex. 10.)

18      33.  At 6:20 p.m. on February 12, 2023, the disciplinary hearing was conducted for

19  case No. 7262529 regarding the contraband possession. Plaintiff was found guilty of

20  'Constructive Possession of a Cellular Telephone'. Plaintiff was sanctioned to 90 days Credit

21  Loss, 90 days Day Room Privileges Loss, and 1 year Loss of Family Visits. (Barba Decl. Ex.

22  10.)

23      34.  Plaintiff had prior violations for possession of contraband: possession of a cell

24  phone in January 2015; possession of a cell phone in January 2017; possession of a controlled

25  substance in June 2020; and possession of a cell phone in January 2023. (Barba Decl. Ex. 12, 13;

26  Pl. Dep. 54:9-20; 54:2-8; 53:12-25; 54:1.)

27      35.  Plaintiff submitted a 602-1 Grievance Report on March 14, 2023, alleging staff

28  misconduct by Defendants Roman and Rodriguez. (Barba Decl. Ex. 1.)

7

36. On March 17, 2023, the Office of Grievance determined Plaintiff's allegation of staff misconduct from March 14, 2023, would be referred to outside the grievance and appeal process for further investigation. (Barba Decl. Ex. 2.)

37. Plaintiff complained about his left thumb and submitted a 7362 Health Care Services Request Form on March 15, 2023. Plaintiff was seen by a nurse on the following day. (Singh Decl. Ex. 6, 7.)

38. Plaintiff complained about his left thumb and submitted a 7362 Health Care Services Request Form on March 23, 2023. Plaintiff was seen by a nurse on the following day. (Singh Decl. Ex. 8, 9.)

39. Plaintiff received additional testing for his left hand on April 27, 2023. His Patient Letter noted "test results are essentially within normal limits or are unchanged and no provider follow-up is required." (Singh Decl. Ex. 12.)

40. Plaintiff complained about his left thumb and submitted a 7362 Health Care Services Request Form on May 15, 2023. Plaintiff was seen by a nurse on the following day. (Singh Decl. Ex. 10, 11.)

41. On June 7, 2023, Plaintiff's Radiology Report noted "[n]o acute fracture or traumatic misalignment. No destructive bony lesion. The joint spaced are preserved." (Singh Decl. Ex. 13.)

42. On June 14, 2023, Plaintiff was interviewed by the Office of Internal Affairs regarding the alleged incident. In this interview, Plaintiff admitted he had intentionally jammed the door to Cell No. 208. Plaintiff stated that he placed his hands in the path of the door despite knowing the door was being opened. Plaintiff admitted he did not respond to Defendant Rodriguez's fellow officer's offerings of medical assistance. Body camera footage was reviewed and the brevity of the incident and lack of noticeable injury on Plaintiff's left thumb was noted. (Barba Decl. Ex. 6 (Audio at 0:02, 3:50, 4:44, 9:28; 19:55).)

43. On August 3, 2023, CDCR Office of Appeals rejected Claim #001 regarding the alleged incident. (Barba Decl. Ex. 4.)

44. On September 29, 2023, the warden sent a memorandum regarding the allegations

of staff misconduct by Plaintiff against Defendant Rodriguez. The allegation against Defendant Rodriguez for forcefully opening the door to Cell No. 208 was "Not Sustained". The allegation against Defendant Rodriguez for failure to offer medical treatment was "Not Sustained". (Barba Decl. Ex. 5.)

45. On October 4, 2023, Plaintiff complained about his left thumb. Following the complaint, on October 16, 2023, Plaintiff's Radiology Report noted "[n]o acute fracture or traumatic malalignment. No destructive bony lesion. The joint spaces are preserved." (Singh Decl. Ex. 14, 15.)

46. On January 30, 2024, Plaintiff received an MRI report noting a "nondisplaced base of thumb fracture;" however, an orthopedic specialist reviewed the MRI and report in February 2024 and concluded there was "no fracture or dislocation." Plaintiff was recommended therapy. (Singh Decl. Ex. 16.)

47. Dr. I. Singh, a CDCR physician working at Plaintiff's current facility, reviewed Plaintiff's medical history regarding this alleged event and opined Plaintiff's thumb injury was minor based on 1) no excessive bleeding; 2) no stitches required; 3) negative x-rays from January 2023, June 2023 and October 2023; 4) no record of Plaintiff asking for lower bunk bed authorization; and 5) no record of Plaintiff asking for disability accommodation, as a person with a serious thumb injury would likely have requested accommodations. (Singh Decl. ¶¶ 4, 5.)

### C. Analysis of Defendants' Motion

Plaintiff alleges that Defendant Roman caused his hand to be caught by the cell door opening, and Defendant Rodriguez failed to intervene before and after his hand was caught by the cell door opening.

Defendants argue the undisputed facts show that it was Plaintiff's own actions that caused his hand to be caught by the cell door opening. Defendants Roman specifically argues that the undisputed facts show that he operated the electronic cell door in good faith, and there is no evidence that he operated the door in a malicious and sadistic manner to cause Plaintiff harm. Defendant Rodriguez argues the undisputed facts demonstrate that he did not have a reasonable opportunity to intervene because of how Plaintiff's hand was unexpectedly caught by the opening

9

1  cell door, and because he was unaware Plaintiff had placed his hand in an area where the door
2  was opening.  In the alternative, both Defendants argue they are entitled to qualified immunity.
3        The Eighth Amendment protects prisoners from inhumane methods of punishment and
4  from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.
5  2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual
6  Punishments Clause of the Eighth Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992)
7  (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must
8  provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.
9  Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted).
10       "[W]henever prison officials stand accused of using excessive physical force in violation
11  of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-
12  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
13  Hudson, 503 U.S. at 6-7.  Relevant factors for this consideration include "the extent of injury... [,]
14  the need for application of force, the relationship between that need and the amount of force used,
15  the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the
16  severity of a forceful response.' " Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)).
17  Finally, because the use of force relates to the prison's legitimate penological interest in
18  maintaining security and order, the court must be deferential to the conduct of prison officials.
19  See Whitley, 475 U.S. at 321–22.  Not "every malevolent touch by a prison guard gives rise to a
20  federal cause of action." Id. at 9.  De minimis uses of physical force do not violate the
21  constitution provided that the use of force is not of a sort "repugnant to the conscience of
22  mankind." Whitley v. Albers, 475 U.S. 312, 327 (1986) (quoting Estelle v. Gamble, 429 U.S. 97,
23  106 (1976).
24       Prison officials have a duty to take reasonable steps to protect inmates from physical
25  abuse.  Farmer, 511 U.S. at 832-33.  A prison official who does not himself use force may violate
26  the Eighth Amendment if he has a reasonable opportunity to intervene in other officials' use of
27  excessive force but does not do so.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).
28       Here, it is undisputed that on January 22, 2023, sometime before 5:25 p.m., Defendant

10

Officer C. Rodriguez, who was working as the Facility C Building, Unit C8 Floor Officer #1, pursuant to his post orders, notified Defendant Roman in the Control Room Booth, through a gear port connecting the staff room and Control Room Booth, that he decided to conduct a random cell search of Cell No. 208, which was Plaintiff's cell. (UF 10.) At approximately 5:25 p.m., Defendant Rodriguez and a fellow officer approached the door to Cell No. 208. (UF 11.) Defendant Rodriguez told Plaintiff the officers would be conducting a random cell search. Plaintiff heard Defendant Rodriguez notify him of the cell search. (UF 12.) By motioning with his hand, Defendant Rodriguez signaled to Defendant Roman to mechanically open the door to Cell No. 208. (UF 13.) Defendant Roman attempted to mechanically open the door to Cell No. 208 by depressing the corresponding red button in the Control Room Booth. (UF 14.) After the cell door to Cell No. 208 was opened, Plaintiff looked down at his left thumb and made a passing remark. Defendant Rodriguez asked Plaintiff if he was okay but received no response from Plaintiff. Defendant Rodriguez instructed Plaintiff to exit the cell, but Plaintiff did not comply. (UF 15.) Plaintiff retreated into Cell No. 208 where his actions were obscured by a makeshift hanging curtain. Meanwhile, Defendant Rodriguez instructed Plaintiff to remove the makeshift curtain, but Plaintiff did not comply. (UF 16.) After a few seconds, Plaintiff emerged from behind the curtain and dropped an undisclosed object into the Cell No. 208 toilet before flushing it. (UF 17.)

While Defendant Rodriguez instructed Plaintiff to exit Cell No. 208 to undergo a clothed body search, Plaintiff returned behind the curtain and spoke with his cellmate. (UF 18.) Approximately 30 seconds later, Plaintiff and Love emerged from behind the curtain, pushing it to the side, and exited Cell No. 208. (UF 19.) In exiting Cell No. 208 in front of Defendant Rodriguez, Plaintiff raised and examined his hand. No blood or lacerations were seen by Defendant Rodriguez or are visible on the body camera footage. (UF 20.)

Defendant Rodriguez completed a clothed body search of Plaintiff and instructed Plaintiff to wait in the shower adjoining Cell No. 208. (UF 21.) Plaintiff walked to the shower while Defendant Rodriguez completed a clothed body search of Plaintiff's cellmate; Defendant Rodriguez's fellow officer then escorted Plaintiff and his cellmate into the shower and secured

1   the shower door. (UF 22.) Defendant Rodriguez and his fellow officer returned to Cell No. 208
2   and conducted a systematic cell search. (UF 23.)
3         Plaintiff was taken to medical later in the evening on January 22, 2023, after
4   notifying Defendant Roman about his left thumb pain at approximately 6:45 p.m. Plaintiff
5   reported to the pill line window at 7:00 p.m. requesting an alcohol wipe to clean a small scratch
6   on his hand. No swelling, bruising or active bleeding was noted. Plaintiff requested an x-ray as
7   his left hand. Plaintiff completed a 7362 Health Care Request form. (UF 27.)
8         On January 23, 2023, Plaintiff retuned to medical, but refused care from the nurse
9   on duty and signed a Refusal of Examination and/or Treatment form. (UF 29.) On January 25,
10  2023, Plaintiff's left hand was x-rayed finding "no acute fracture or dislocation" and that the
11  "visualized soft tissues are unremarkable." (UF 30.)
12        Plaintiff complained about his left thumb and submitted a 7362 Health Care
13  Services Request Form on March 23, 2023. Plaintiff was seen by a nurse on the following day.
14  (UF 38.) Plaintiff received additional testing for his left hand on April 27, 2023. His Patient
15  Letter noted "test results are essentially within normal limits or are unchanged and no provider
16  follow-up is required." (UF 39.) Plaintiff complained about his left thumb and submitted a 7362
17  Health Care Services Request Form on May 15, 2023. Plaintiff was seen by a nurse on the
18  following day. (UF 40.) On June 7, 2023, Plaintiff's Radiology Report noted "[n]o acute fracture
19  or traumatic misalignment. No destructive bony lesion. The joint spaced are preserved." (UF 41.)
20        Viewing the record in the light most favorable to Plaintiff, summary judgment is
21  warranted because there is no genuine issue of material fact on Plaintiff's excessive force claims.
22  Plaintiff acknowledged that he knew Defendant Roman prior to the alleged incident, but he had
23  no negative interactions with him. (UF 4.) Plaintiff also knew Defendant Rodriguez prior to the
24  alleged incident, but his interaction with Rodriguez was limited. (UF 5.) Plaintiff further
25  admitted that he did not believe Defendant Roman opened the cell door intentionally to hurt him.
26  (UF 4.) Plaintiff presumed Defendant Roman saw him when his hand got caught by the door
27  opening. (Id.)
28        It is undisputed that on January 22, 2023, Defendant Roman electronically opened

1  Plaintiff's cell door in order to allow Defendant Rodriguez to search Plaintiff's cell. (UF 10.) In
2  fact, Defendant Roman was following protocol when Defendant Rodriguez requested him to open
3  Plaintiff's cell door. (UF 9.) There is simply no evidence that Defendant Roman opened
4  Plaintiff's cell door for a malicious and sadistic purpose, and Plaintiff admits he had no prior
5  negative history with Defendant Roman. (UF 4.) Indeed, Plaintiff did not believe Defendant
6  Roman opened his cell door with the intent to hurt Plaintiff. (Id.)

7  Plaintiff contends that Defendant Roman "could see [Plaintiff] and hear [Plaintiff] yelling
8  my hand multiple times But [sp.] he kept on opening the cell door." (ECF No. 12 at 3.) First,
9  Plaintiff does not dispute that Defendant Roman did not see or hear anything which would have
10  prompted him to stop opening Plaintiff's cell door. (UF 15.) Second, Plaintiff's contention is
11  belied by Defendant Rodriguez's body cam video, which does not show Plaintiff yelling "my
12  hand" multiple times. (UF 20.) Rather, the body cam video reveals the door catching Plaintiff's
13  left hand, which he left in a gap in a path where the door was opening, and Plaintiff stating in
14  ordinary volume, "ah man, my fingers stuck in here, what the fuck is you doing?" (Id.) In
15  addition, the video cam further supports the lack of a malicious and sadistic intent on the part of
16  Defendant Roman as it shows Plaintiff was clearly aware of the opening cell door, first when
17  Defendant Rodriguez told him about the impending cell search, and then again when the cell door
18  only opened part way and stopped. (UF 20.)

19  Furthermore, the lack of a significant injury to Plaintiff supports the finding that
20  Defendants did not act with malicious and sadistic intent to harm him. See Hudson, 503 U.S. at 9
21  (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it
22  may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's
23  constitutional rights.")); Witkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (the extent of the injury is
24  relevant because it can "provide some indication of the amount of force applies."). Plaintiff does
25  not dispute that Defendant Rodriguez's body cam video clearly depicts no visible bleeding on
26  Plaintiff's left hand immediately after his hand was allegedly caught in the door. (ECF No. 12 at
27  3); (UF 20.) Moreover, the medical records and review by a CDCR physician reveal only a minor
28  injury to Plaintiff's thumb. (UF 47.) Plaintiff argues that an MRI demonstrated that his thumb

was "broken at the base because of this incident." However, Plaintiff's medical records reveal three negative x-rays. (Id.) Further, Plaintiff's MRI taken a year after was misread as a fracture. (UF 46.); see Hillman v. Green, No. 2:16-cv-2256-JR, 2018 WL 3194882, *6 (D. Oregon May 29, 2018) (judgment in favor of defendant where the plaintiff was pinned by a closing door .because there was minimal force involved and a lack of resulting injury).

To this end, there is no genuine issue of material fact as to whether Defendant Rodriguez had a reasonable opportunity to intervene. The video cam depicts that it was Plaintiff's actions of jamming his own cell door which caused it to pause, and then it was Plaintiff who decided to stay at the door to complain to Defendant about the random cell search, while leaving his hand in a position to be caught by the second attempt to open the cell door. (UF 20.) The undisputed evidence demonstrates that Defendant Rodriguez was not even aware Plaintiff put his hand on the path where the door was opening. (Id.) When the cell door opened all the way and caught Plaintiff's hand, his hand was stuck for only a slight moment and there was no reasonable opportunity for Defendant Rodriguez to respond. (Id.) Accordingly, summary judgment should be granted in favor of Defendant Rodriguez, as well as Defendant Roman.[6]

**D.     Dismissal of Doe Defendant Pursuant to Federal Rule of Civil Procedure 4**

Plaintiff's medical claim against Defendant Doe remains. Although "the use of 'John Doe' to identify a defendant is not favored," Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds," Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

Here, the Court accorded Plaintiff this opportunity in its February 2024 service order, explaining that Defendant Doe could not be served before being identified and noting that Plaintiff could amend his complaint if the Defendant's identity was ascertained during discovery.

---

[6] Because Defendants are entitled to judgment on the merits of Plaintiff's claim, the Court need not and does not reach the issue of qualified immunity.

14

1  (ECF No. 13 at n.1.) The August 16, 2024 discovery and scheduling order provided that the
2  parties could conduct discovery until April 16, 2025. (ECF No. 33.) The Plaintiff has not moved
3  to amend his complaint, moved to substitute Defendant Doe, or otherwise notified the Court of
4  the identity of Defendant Doe.

5  Pursuant to Rule 4 of the Federal Rules of Civil Procedure, "[i]f a defendant is not served
6  within 90 days after the complaint is filed, the court—on motion or on its own after notice to the
7  plaintiff—must dismiss the action without prejudice against that defendant or order that service
8  be made within a specified time. But if the plaintiff shows good cause for the failure, the court
9  must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). This 90-day
10 deadline under Rule 4(m) applies to service on unnamed defendants. See Bulgara v. Cty. of
11 Stanislaus, No. 1:18-cv-00804-DAD-SAB, 2020 WL 5366306, at *5 (E.D. Cal. Sept. 8, 2020),
12 report and recommendation adopted, No. 1:18-cv-00804-DAD-SAB (PS), 2021 WL 1105255
13 (E.D. Cal. Mar. 23, 2021) (dismissing action against "Doe defendants" for failure to serve within
14 Rule 4(m)'s 90-day deadline). In this case, well over 90 days have elapsed since the filing of
15 Plaintiff's second amended complaint on February 22, 2024. (ECF No. 12.) Plaintiff has therefore
16 failed to serve the Defendant Doe in compliance with Rule 4(m).

17 In addition to Rule 4(m)'s requirements, "a court may dismiss a defendant, a claim[,] or
18 an action based on a party's failure to prosecute an action[,] failure to obey a court order, or
19 failure to comply with local rules." Bulgara, 2020 WL 5366306, at *5 (citing Ferdik v. Bonzelet,
20 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring
21 amendment of complaint), Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal
22 for failure to prosecute and to comply with local rules)). Plaintiff received advisement that he
23 was required to amend his complaint to identify the Doe Defendant so that the complaint could be
24 served. (ECF No. 13.) Discovery has closed and the deadline to amend the pleadings has passed
25 without Plaintiff filing anything to indicate that he has identified Defendant Doe.

26 Where Plaintiff has failed to effect service in accordance with Rule 4(m) and has failed to
27 comply with the orders instructing him to identify the defendant before the close of discovery,
28 dismissal of a Doe defendant is warranted. See Williby v. California, 276 F. App'x 663, 665 (9th

Cir. 2008) (holding district court's sua sponte dismissal of Doe defendants was merited where plaintiff had failed to identify defendants within allotted discovery period); Bulgara, 2020 WL 5366306, at *5 (recommending dismissal of Doe defendants, without additional notice, for failure to effect service under Rule 4(m) where defendants were not identified within the allotted discovery period).  Accordingly, Plaintiff's medical claim against Defendant Doe should be dismissed from this action.

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. Summary judgment be entered in favor of Defendants Roman and Rodriguez; and
2. Plaintiff's medical claim against Defendant Doe be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge